2296. PRUDENTIAL INSURANCE CO. *v.* CHESTNUT.

There was no error in overruling the demurrer to the plaintiff's petition. Construing the insurance policy as a whole, it is apparent that the insurance was in force at the date upon which one of the insured parties died. As the insurance company accepted the payment of the premium quarterly instead of annually, the insured, in any view of the case, under the express provisions of the contract, would have had 120 days of extended insurance from the day on which there was default in the payment of the quarterly premium.

DECIDED SEPTEMBER 20, 1910.

Action on insurance policy; from city court of Atlanta—Judge Reid. October 29, 1909.

*McDaniel, Alston & Black*, for plaintiff in error.

*Moore & Pomeroy*, contra.

RUSSELL, J.  We see no error in the judgment overruling the demurrer of the insurance company.  By the demurrer it is insisted that the plaintiff's petition fails to set forth a cause of action, because it is apparent, from the contract of insurance attached to the petition, that the policy had lapsed.   From an examination of the policy it appears that this is a contract by which the Prudential Insurance Company undertook to insure the joint lives of Thomas R. Chestnut and Ruby Valentine Chestnut, the amount of the policy being payable to the survivor.   The petition alleges, that all of the premiums were paid in quarterly instalments, and that the petitioner (Thomas R. Chestnut) paid to the defendant the premiums for two years and six months, and that all premiums due and payable upon the policy up to and including December 21, 1908, were paid.   The petitioner, therefore, sets up that by the operation of the policy it was extended for 331 days from December 21, 1908, and that the extended insurance was in force at the time of the death of Ruby Valentine Chestnut, the insured, July 8, 1909.

In support of its contention that the policy had lapsed, the insurance company insists that the paid-up joint life policy provided for by the contract, in the form of extended insurance, applies only after the policy has been in force three full years, there being in the policy a stipulation as follows: If this policy, after being in force three full years, shall lapse or become forfeited for the non-payment of any premium on the date when due as specified on the first page hereof, or of any note given for a premium or loan made in cash on such policy as security, or of any interest on such note or loan, it may be surrendered for a non-participating paid-up joint life policy as specified in the following table, provided the policy be legally surrendered to the company within three months after the date on which premiums have been duly paid.  If this policy, having lapsed or become forfeited as above, be not surrendered for a paid-up joint life policy, the company will write in lieu of this policy *without any action on the part of the insured,* a non-participating paid-up joint term policy for the full amount insured by this policy.   Such paid-up joint term policy to be dated on the day to which premiums have been duly paid, and to continue in force for the term indicated by the following table.

It is insisted by counsel for the plaintiff in error, that the provisions in the policy clearly indicate that the paid-up joint life

policy shall apply only after the policy has been in force three full years.    The plaintiff in error attempts to avoid the provisions contained in a table providing for cash loan values, paid-up joint life policy values, extended insurance values, and cash surrender values, headed "Privileges," by pointing out that there is no cash loan privilege or joint life policy, nor any cash surrender value as a privilege, until the end of three years, and that though there is a privilege given for extended insurance of 60 days at the end of one year, and of 120 days at the end of two years, these privileges must be construed as special privileges subject to and conditional upon the language under the heading of "Special privileges," to wit: "Policy non-forfeitable after the first year's premium has been paid.    If this policy, after being in force one full year, shall lapse for non-payment of premium, the company will continue in force the insurance under the policy for a period of 60 days from the due date of such premium as specified on the first page hereof.   If this policy, after being in force two full years, shall lapse for non-payment of premium, the company will continue in force the insurance under the policy for 120 days from the due date of such premium; provided, however, that if the death of either of the insured shall occur during the period of continued insurance herein defined, there shall be deducted from the amount payable by the company any premium that would have become due on this policy up to the time of such death, if the policy had been continued in force.    After the policy has been in force for three or more years, the above privilege, 'Paid-up joint life policy or extended insurance,' will apply."    It is insisted that this clause shows that the 60 days and 120 days extended insurance named in the table "is not to be considered as extended insurance under the policy, but as special privilege agreed to by the company under the policy."    We think this is a distinction without a difference; because the plaintiff's right is the same whether the stipulation above quoted is to be considered as an extended insurance value under the policy, or as a special privilege, provided it is likewise included in the policy.    Whether the extended insurance is a special or a general privilege, it is very plain, from the provisions of the policy, together with the statement of the plaintiff's petition, that the premiums were payable quarterly, that the holder of the policy had a right to extended insurance when he had paid the premiums for one year and for two years, and we fail

to see why he would not have the same right merely because he had paid two years and a half instead of two years.     In fact, the policy itself provides that "if the premiums on this policy be paid in quarterly or semi-annual instalments, due allowance will be made, in computing benefits from the above table, for that portion of a year's premium paid over and above the full number of years' premiums indicated."

The insistence of the defendant in error is that, under this latter clause, he is entitled to extended insurance, based upon the additional extended insurance to which he would be entitled when the policy was two and a half years old over what extended insurance he would be entitled to when the policy was two years old.     The plaintiff seems to have reached the extent of his extended insurance as claimed in his petition, by deducting, from the duration of extended insurance to which he would have been entitled if the premiums for three full years had been paid, the 120 days of extended insurance allowed for the payment of the first two years' premiums, and dividing the difference by two.     The amount of the extended insurance if the premiums had been paid for three years would be 542 days; the extended insurance for the two years is 120 days; the difference is 422 days; and the half which would be apportioned for the premiums paid for the additional six months would be 211 days, which would extend the policy from December 21, 1908, to a date beyond July 8, 1909, when Mrs. Chestnut, the insured, died.

We need not decide whether the judgment overruling the demurrer can be sustained by the method upon which the plaintiff bases his calculations as to the duration of the extended insurance. There is no difficulty whatever in determining that the policy had not lapsed, when the allegations of the petition that the payments were paid quarterly, and that the premium due December 21, 1908, was paid, are construed with other clauses of the contract.  It must be remembered that the contract was prepared by the insurance company, and is to be at least reasonably construed in favor of the insured.     Where there are any conflicting provisions which render the real intent of the parties doubtful, public policy requires that the construction placed upon the policy shall be that which is most favorable to the insured.     And every part of the contract will be considered in connection with every other part, in an effort to reach the true intent of the parties in making the contract.  Cer-

tainly it can not be said that this contract authorizes a construction which would give the insured less rights because he had paid the premiums for two years and a half than he would have had if he had only paid premiums for two years. Certainly the fact that the company had received the premiums for the additional six months must be taken into consideration, and it can not be held that the insurer should be permitted to take this much money without giving anything in return. The demurrer admits that the premiums in this case were paid quarterly, and the policy provides for such a payment, and goes on to say that in such a case "due allowance will be made, in computing benefits from the above table, for that portion of a year's premiums paid over and above the full number of years' premiums indicated." The only difference between the benefits conferred by the table upon those who have paid only one year's premium, or two years' premium, and those who may have paid more is that while those who have paid premiums for one year and two years have the privilege of definitely fixed extended insurance, they are not entitled to cash loan values, cash surrender values, or a paid-up joint life policy. But the second clause of the "Special privileges" provides that if this policy "after being in force two full years, shall lapse for non-payment of premium, the company will continue in force the insurance under the policy for 120 days from the due date of such premium." This is followed by a provision that any unpaid premiums shall be deducted from the amount to be paid by the company. Treating the scheme of the company as a fair and equitable one, the next quarterly payment (after the one which was paid on December 21, 1908) was due March 21, 1909. It was not paid. But the policy had been in force two full years and more. One of two things was obliged to happen. Either the company, after having received the premium due on December 21, 1908, would have it in its power to put the insured in a worse condition than if he had not paid that money, or else, as it is undenied that two full years' premiums had been paid, the holder of the policy would be entitled at least to as much extended insurance as he would have been entitled to if only two years' premiums had been paid and no more. By no method of computation could one who had paid more than two years' premiums be entitled, from the reserve fund of the company in which he has an interest, to a less amount than he would be entitled to if he had paid exactly

two years' premiums. By any process of reasoning this contract would come in the class of those which had been in force two full years, and the plaintiff would be entitled to an extension of 120 days from March 21, which was the due date of the quarterly premium. This would have extended the policy to July 19, 1909; and consequently there can be no question but that the extended insurance was in force on July 8, 1909, when Mrs. Chestnut died. The provision in regard to a *"paid-up joint term policy,"* on which the counsel for plaintiff in error relies, of course has no reference to a state of affairs such as that detailed in the petition, because that provision has special reference to a policy which has been in force for three full years. It is, however, not a paid-up joint term policy, but the benefit of the provision in regard to extended insurance for a definite time, which the plaintiff seeks to recover by his petition.

*Judgment affirmed.*