INSURANCE CO. OF NORTH AMERICA v. McCOACH, Collector of Internal Revenue.

(Circuit Court of Appeals, Third Circuit.   July 6, 1915.)

No. 1916.

1. INTERNAL REVENUE ⊕⇒9—EXCISE TAX—FIRE INSURANCE COMPANIES—"SUR-PLUS."

That an insurance company has a surplus much more than adequate to meet every addition to the reserve fund, as required by the state law, "surplus" being what remains after making provisions for all liabilities of every kind, except capital stock, does not deprive it of its right to the deduction of the amount required for reserve funds, in ascertaining the net income upon which an excise tax levied under Act Aug. 5, 1909, c. 6, § 38, subd. 2, 36 Stat. 112 (Comp. St. 1913, § 6301), is to be paid.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. ⊕⇒9.

For other definitions, see Words and Phrases, First and Second Series, Surplus.]

2. INTERNAL REVENUE ⊕⇒9—EXCISE TAX—FIRE INSURANCE COMPANIES—"RESERVE FUND."

The Corporation Excise Tax Law (Act Aug. 5, 1909) imposes an annual tax upon the privilege of doing business, and bases its assessment upon the annual net income of the corporation.   Section 38, subd. 2, provides that such net income shall be ascertained by deducting from the gross income all losses sustained, and in the case of insurance companies the sums other than dividends paid within the year on policy and annuity contracts, "and the net addition, if any, required by law to be made within the year to reserve funds."   Act Pa. June 1, 1911 (P. L. 612) §§ 7–9, provides for a reinsurance reserve, and declares that after the insurance commissioner has charged as a liability the reinsurance and loss reserves as defined for insurance companies, other than life, and adding thereto all other debts, he shall ascertain whether the capital stock thereof has been so impaired that the company should be required to make the impairment good.   As an item of liability the insurance commissioner has uniformly required the net amount of unpaid losses and claims to be returned, whether adjusted or not.   *Held*, that unpaid losses are properly included within the addition to be made to the reserve funds within the Excise Act in determining the net income of a fire and marine insurance company.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. ⊕⇒9.

For other definitions, see Words and Phrases, First and Second Series, Reserve Fund.]

Woolley, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Dickinson, Judge.

Suit by the Insurance Company of North America against William McCoach, Collector of Internal Revenue, to recover taxes paid.  There was a judgment for plaintiff for less than he demanded (218 Fed. 905), and he brings error.  Reversed, with directions.

B. Franklin Pepper, of Philadelphia, Pa., for plaintiff in error.

Francis Fisher Kane, of Philadelphia, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge.   Under the act of August 5, 1909, the government compelled the Insurance Company of North America to pay an excise tax with respect to its net income for the years 1910 and 1911.   This suit is brought to recover a part of the tax, the company claiming that too much had been exacted.   In the court below two items were in dispute, and, as the company obtained judgment for only one of them, this writ of error presents the question whether judgment should have been entered for the other item also, a sum of $2,503.47, with interest.   The opinion of the district judge is reported in 218 Fed. (C. C.) at page 905.

The trial was without a jury, and nearly all the facts were agreed upon, only three witnesses having been heard.   The controversy arises in this way: The company, a Pennsylvania corporation chartered in 1794 by a special act (3 Smith's Laws, p. 129), is now subject to the general insurance laws of the state.   Its business is confined to fire and marine risks.   As the federal statute lays the tax with respect to net income, the question is immediately presented, How is net income to be ascertained?   The answer is found in section 38, subd. 2, and we quote so much of the section as is now important:

" * * * Such net income shall be ascertained by deducting from the gross amount of the income of such * * * insurance company, * * * all losses actually sustained, &c. * * * and in the case of insurance companies the sums other than dividends paid within the year on policy and annuity contracts *and the net addition if any required by law to be made within the year to reserve funds.*"

We italicize the words on which the decision turns.

[1] 1. The first matter to be noted is that the deduction in question is such addition as may be "required by law."   The parties agree that this phrase means the law of the particular state, for the federal government does not attempt to regulate the internal affairs of insurance companies.   In this case, we have to do with the requirements of the Pennsylvania law, and especially with such as concern the reserve funds of fire and marine insurance companies.   (The reserves required from companies doing other kinds of insurance are not involved in this controversy.)   Whatever sum, therefore, the law of the state required the company to add to its reserve funds during each of the years in question is expressly declared by Congress to be a proper item of deduction from the company's gross income.   For the moment, we defer the examination of the Pennsylvania law on this subject, in order to consider the ground on which the district court decided against the company.   Briefly, the position taken by the learned judge is this: That, because the company had an ample surplus, much more than adequate to meet every addition to its reserve funds that was required by the state, it could not be allowed the deduction given by the federal statute.   One of the additions required was the amount necessary to meet unpaid losses and claims, and the ground taken below seems, in effect, to be this: Since the company had accumulated a surplus more than enough to meet these unpaid claims, it had lost its right to the deduction.   We do not know whether the deduction would have been regarded as allowable, if the company had been barely able to provide for these liabilities, but in any event we cannot agree with the conclu-

sion. Surplus is what remains after making provision for all liabilities of every kind (leaving capital stock out of the present consideration); and, as we understand the situation before us, the surplus of the Insurance Company of North America is what remained after it had made provision for these losses by setting aside all that the Pennsylvania law required for that purpose. We are unable to see how the fact can be relevant that (after thus providing once for these losses) the company still had in its treasury a large sum of money out of which it could pay them again, and several times over. In other words, we do not think the company's surplus has anything to do with the present dispute. Congress has in terms allowed the company to deduct from its gross income "the net addition, if any, required by law to be made within the year to reserve funds"; and, as we see the question for decision, it is simply this: What net addition does the Pennsylvania law require to be made to the reserve funds of an insurance company doing a fire and marine business only?

[2] 2. In order to answer this question correctly, we must first ascertain what Congress meant by "reserve funds." Was the phrase used in a special sense, or does it include generally such funds as must be reserved to meet liabilities, whether they be contingent or already adjusted? In our opinion it bears the general meaning. If Congress intended to allow no other deduction on this account except what is technically known as "reinsurance reserve," or unearned premium, it is not easy to understand why that well-known term of art was not used. The plural form, reserve funds, seems also to indicate that Congress intended to include, not only reinsurance reserve, but any other fund as well that a state might require the company to set aside for the purpose of meeting such a liability as unpaid losses and claims. This seems to be the natural and ordinary meaning of the words, and presumably therefore is the construction to be adopted.

What then does the Pennsylvania law require to be added to the reserve funds of a fire and marine insurance company? For more than 40 years the state has had a department of insurance, and a system of regulating the affairs of companies doing that kind of business, and from time to time it has passed statutes on this subject. On June 1, 1911, an act was adopted codifying and superseding many of the previous enactments, and (although this statute is later than 1910, one of the years now in question) we need not go behind it, since for present purposes it does not differ materially from the earlier acts. The system is as follows: A department of insurance is established in charge of a commissioner, whose powers of control are varied and extensive. He is to see that all the laws of the state respecting insurance companies are faithfully executed. At his pleasure he may investigate and examine the affairs of any company with the utmost thoroughness. If it has failed to comply with the law, or if he shall find its assets insufficient, he may suspend its entire business, reporting the delinquent to the Attorney General for further action looking to its dissolution. He is to make an annual report to the Legislature of the condition of all the companies doing business in the state. Every such company must file an annual statement, using the blank forms furnished by the com-

·missioner, who may adopt any form he thinks "best adapted to elicit from them a true exhibit of their financial condition." Failure to make such a statement, or the making of a false statement, is severely punished.

The act provides in section 4 the method of ascertaining the "reserve liability" of life insurance companies (with which we have no present concern), and then in sections 7, 8, and 9 turns to the subject of ascertaining the financial condition of other companies. These sections first take up reinsurance reserve, and provide that, "in determining the liabilities upon its contracts of insurance of any insurance company other than life insurance, and the amount such company shall hold as a reserve for reinsurance," the commissioner shall charge casualty insurance companies with a certain proportion of their premiums; and—

"For fire insurance companies he shall charge 50% of the premiums written in their policies upon all unexpired risks that have one year, or less than one year, to run, and a pro rata of all premiums on risks having more than one year to run; on perpetual policies he shall charge the deposit received, less a surrender charge of not exceeding 10% thereof. From [For] marine and inland risks he shall charge 50% of the premium written in the policy upon yearly risks, and the full amount of the premium written in the policy upon all other marine and inland risks not terminated."

Having thus dealt with reinsurance reserve, the statute goes on to unpaid losses, and provides that the commissioner "shall, in calculating the reserve against unpaid losses," pursue a certain method with casualty companies (which does not need consideration now); and then, taking up other classes of companies, it declares in section 9 that after the commissioner has "charged as a liability the reinsurance and loss reserves, as above defined for insurance companies of this commonwealth other than life, *and adding thereto all other debts and claims against the company*," he shall thus ascertain whether the capital of the company has been so impaired that the company should be required to make the impairment good, as a condition to the doing of further business.

Acting under the authority of the statutes that have been in force since 1873, the commissioner has required the plaintiff and similar companies to return each year, as an item among their liabilities, the net amount of unpaid losses and claims, whether such losses are actually adjusted, or are in process of adjustment, or are resisted; and in so doing he has followed what the department has always understood to be the command of the Pennsylvania law. It is true that in this particular the statutes have never been interpreted by the Supreme Court of the state, but we think it must be conceded that (even if their meaning be considered doubtful) they are susceptible of the construction thus put upon them by the department that completely controls the subject. Moreover, as far as we know, the construction has never been contested, and it is clear that this form of report has been required by the department from the beginning. We have felt at liberty to examine the commissioner's official reports for 1876, 1884, 1894, and 1904 (although these were not in evidence), as well as the company's reports for 1910 and 1911, and we find this item of unpaid losses always charged as a liability. Being a liability, and so charged

in the company's accounts, funds are necessarily "reserved" to meet it, although of course they are not, and need not be, physically set aside for that purpose.

One of the witnesses has been connected with the department for more than 30 years, either as clerk or deputy or as the commissioner himself, and he testified to this construction and gave excellent reasons therefor. Another witness, a man of 45 years' experience, testified that this was the general construction in the insurance business, and no evidence was offered to the contrary. Indeed, it is difficult to see how any other opinion could be entertained. After a loss has happened, the damage done thereby becomes an undoubted liability of the company, and (except now and then) will have to be met. In most cases all that remains to be done is to adjust the loss in order to ascertain the precise amount due, and usually this amount can be estimated in advance with sufficient accuracy to determine how much the company should set aside to make the damage good. Such unpaid losses are "claims against the company," and in our opinion the Pennsylvania law (while it may be somewhat lacking in precision of statement) required them to be added to the company's liabilities, and required funds to be reserved sufficient to meet them in full.

It is hardly necessary to cite authorities on the point that the uniform construction of a statute adopted by the highest administrative authorities is entitled to great respect (U. S. v. Healey, 160 U. S. 141, 16 Sup. Ct. 247, 40 L. Ed. 369; U. S. v. Cerecedo Hermanos y Compania, 209 U. S. 339, 28 Sup. Ct. 532, 52 L. Ed. 821); and we should hesitate long before we differed from such a construction, even where we had more doubt concerning its correctness than we have in the present instance.

The district judge entertained the same opinion concerning the meaning of "reserve funds" as we have just expressed, but was misled (as we think) by his views in reference to the surplus. We conclude that the company was entitled to the reduction in dispute, and the judgment must therefore be reversed, with instruction to allow the claim.

WOOLLEY, Circuit Judge (dissenting). I oppose the judgment to be entered in this case. While approving the judgment below, I do not concur in the reasoning upon which it was entered. With very great respect for the opinions both of the court below and of this court, I am constrained to differ with both; and, being unable, in this peculiar situation, to indicate the grounds for my dissent merely by noting the same, I will state as briefly as may be the matters that have controlled my judgment.

The Corporation Excise Tax Law (36 U. S. Stat. 112) imposes an annual tax upon the privilege of doing business in a corporate capacity, and bases its assessment upon the annual net income of a corporation. Net income is ascertained by deducting from the gross income sundry designated items, as ordinary and necessary expenses actually paid, losses actually sustained, and, in the case of insurance companies, "the net addition, if any, required by law to be made within the year to reserve funds." In permitting a deduction of an addition to the re-

serve funds of a corporation over its reserve funds of the previous year, and thereby exempting them from taxation, Congress recognized that in the case of insurance companies, certain funds are uniformly and necessarily reserved to meet liabilities, which, from the very nature of the business of insurance, are unknown and contingent; and in describing the reserve funds thus to be deducted, Congress made no attempt to define their nature or prescribe their amount, but, in the absence of federal law upon the subject, obviously contemplated and intended such funds as are required to be reserved by the laws of the states in which insurance companies do business. In doing this Congress purposely made the provision so elastic that the federal law might readily be administered in harmony with the laws of different states.

The controversy in this case, therefore, resolves itself into a question of what constitutes the "reserve funds" "required by law" of the state of Pennsylvania, or, stated with reference to the particular claim upon which this suit is founded, does the law of Pennsylvania require fire insurance companies to maintain "reserve funds" to meet "unpaid losses and claims"?

The plaintiff insurance company is a fire and marine insurance company, and for the purposes of this case may be treated with respect to its business of fire insurance alone. The law of Pennsylvania upon the subject of reserves for fire insurance companies, in so far as it affects the question in this action, is embraced in two statutes. The act of April 4, 1873 (P. L. 20), provides for a "reinsurance reserve for unexpired fire risks," to be calculated upon certain percentages of premiums received, and makes no other provision for reserve funds. The act of June 1, 1911 (P. L. 607), requires the maintenance of precisely the same "reinsurance reserve for unexpired fire risks," calculated in the same way, and likewise makes no other provision for reserve funds. The statute, however, requires casualty insurance companies, in addition to such "reinsurance reserve," to maintain reserves to cover "unpaid losses," estimated upon claims presented. The "reinsurance reserve," which is sometimes termed the "unearned premium reserve," indicating a reserve against either the contingency of loss, or protection by reinsurance, or the cancellation of a risk by the insured with a demand for the return of the unearned part of the premium, is by section 7 of the act of 1911 required of all insurance companies other than life. This includes fire insurance companies. A reserve against "unpaid losses" is required by section 8 only of casualty insurance companies. This does not include fire insurance companies. Section 9 of the act, however, contains this provision:

"Having charged as a liability the reinsurance and loss reserves, as above defined for insurance companies of this commonwealth other than life, and adding thereto all other debts and claims against the company, the commissioner shall, in case he finds the capital of the company impaired twenty per cent., give notice to the company to make good the capital within sixty days."

The deputy commissioner of insurance, speaking for the department of insurance of Pennsylvania, testified, and upon his testimony this court and the court below hold that section 9, which defines as a "lia-

bility" the "reinsurance and loss reserves," makes the "reinsurance reserves" and the "loss reserves" together constitute the "reserve funds" of fire insurance companies, "required by law" of the state of Pennsylvania, the annual addition to which may, by authority of the federal act, be deducted from gross income, and escape federal taxation. I regret that for two reasons I cannot concur with this construction of the statute. The first reason is based upon the language of the statute, which in declaring the "reinsurance and loss reserves" to be a "liability" refers to them "as above defined." How are "reinsurance reserves" and "loss reserves" "above defined"? The "reinsurance reserve" is defined by section 7 of the act, and extends to both fire and casualty insurance companies. The "unpaid loss reserve" is defined by section 8 of the act, and relates only to casualty insurance companies. Therefore, in mentioning these two reserves by the general language of section 9, the act was cautious to maintain the distinction which theretofore was made between them by using the words "as above defined," and leaves the reserve required of fire insurance companies just as it is defined by section 7. As the statute by expression makes no provision for a reserve fund against "unpaid losses and claims" of fire insurance companies, a deduction of an addition thereto cannot be allowed in ascertaining the net income of fire insurance corporations upon which to base its corporation excise tax, unless, indeed, it is found, by construction, that the statute makes such provision. Upon this, I surmise, there is entire accord. Can the statute, therefore, be construed to require fire insurance companies to maintain reserve funds against "unpaid losses and claims"?

In considering the language to be construed, it is found that in the part of the statute in which a reserve fund for fire insurance companies is required and defined, but one kind of reserve is denominated, namely, "a reserve for reinsurance." The statute is silent with respect to fire reserves for other purposes, but the statute, taken as a whole, is not silent with regard to its purpose. If its object had primarily been the requirement and establishment of insurance reserves, and, acting under the two statutes for 40 years, the department of insurance had required the maintenance of real reserves against unpaid losses and claims, the effect of a decision contrary to that practice resulting in its disestablishment, this might be an instance in which the meaning of a statute is to be determined by its contemporaneous exposition. But the establishment and definition of insurance reserves do not, in my opinion, constitute the theory of the statute or its purpose, upon which its construction must be founded. The act contemplates something altogether different and altogether more comprehensive. What is its purpose?

Supervision of the business of insurance has everywhere become a function of state government. States have undertaken to protect their citizens from losses incident to the insolvency of insurance companies, and to this end the state of Pennsylvania, by the act of 1911, prescribes the methods by which the protective measures it assumes may be effectuated. While this act deals indirectly with reserve funds to meet contingent liabilities to be incurred by insurance risks of cer-

tain characters, it deals primarily with the whole assets and liabilities of such companies, and provides how such companies may be watched, their solvency determined, and their continuance in business terminated, in order that the public may be protected. The object of this statute is to ascertain the solvency of insurance companies, rather than to prescribe the methods by which solvency may be maintained. In order to determine their solvency, insurance companies are required annually to report their total assets and liabilities. Their liabilities are of two kinds, known and unknown, or fixed and contingent. Against all liabilities of both kinds, the department of insurance is required to ascertain whether there exist assets sufficient to assure solvency. In a sense, assets so set off against all liabilities may represent assets reserved to meet all liabilities, but assets so employed do not constitute "reserves" as used in the nomenclature of the business, or in the sense employed in either the federal or the state statute. In fact, the state statute considers unexpired fire risks as a "liability," and provides a reserve to meet the same. This is the only fire reserve which the statute expressly requires. But the statute also considers all other liabilities of fire insurance companies, and insists that against their liabilities of all kinds there shall be assets enough to maintain solvency. Section 9 of the act clearly discloses this purpose by providing that:

"Having charged as a liability the reinsurance and loss reserves, as above defined, * * * and adding thereto all other debts and claims against the company, the commissioner shall, in case he finds the capital of the company impaired twenty per cent., give notice to the company to make good the capital within sixty days."

Under this section of the statute, the department of insurance requires every insurance company to report all of its liabilities, contingent and fixed, those against which reserves are required by law to be maintained, and those against which reserves are not so required, sets off assets against all of them, and then ascertains whether the company's capital is impaired 20 per cent., and accordingly grants or withholds from it permission to continue business. Among the list of liabilities, fixed and contingent, offset against which assets and capital must be shown intact in order to disclose solvency, are these, as shown by a report of the plaintiff insurance company, in evidence:

(1) "Unearned premiums" (against which the law expressly provides the unearned premium or reinsurance reserve)....... $6,655,570

(2) "Unpaid losses and claims" (which include the item in dispute)    518,000

(3) "Estimated amount hereafter payable for federal, state, and other taxes" (which includes the very tax now in controversy) .................................................    90,000

(4) "Brokerage and other charges, due or to become due to agents or brokers"...............................................    80,000

(5) "Contingent fund".....................................................    202,404

Each of these items represents liabilities incurred, but not ascertained. Each represents contingent liabilities of one character or another. The contingent liability of "unearned premiums" is calculated in the way prescribed by law, for which a reserve fund is "required by law" to be charged as a liability. Against the other con-

tingent liabilities, no reserve funds are expressly required by law, but the department of insurance demands that they be reported, and very properly requires that sufficient assets be maintained to meet them when ascertained, thereby to insure the solvency of the company. In this list of estimated contingent liabilities is the disputed liability of "unpaid losses and claims." If an addition to assets retained to meet that liability may be deducted, in ascertaining net income for federal taxation purposes, I do not see why additions to assets held against equally undetermined and contingent liabilities of "federal, state, and other taxes," "brokerage and other charges, due or to become due," and "contingent fund" may not likewise be deducted. If the policy of the law and the practice of the department, in requiring insurance companies to preserve sufficient assets to meet all liabilities, make and constitute such assets "reserve funds" within the meaning of the state statute and within the contemplation of the federal statute, then in logic the whole volume of assets so preserved, and in amount equal to the whole volume of liabilities, constitutes "reserve funds," and when additions are made to the several parts thereof, such additions may be deducted and escape federal taxation. Surely this cannot have been intended by one statute or contemplated by the other.

A careful reading of the Pennsylvania statute, supported somewhat by the testimony of the deputy insurance commissioner, suggests that in the scheme of the statute, the principal reason for a reference to a "reinsurance reserve" for fire insurance companies, and a "reinsurance reserve," plus a fund reserved against "unpaid losses" for casualty companies, is to afford the department of insurance an authoritative method of calculating reserves against liabilities of such contingent characters. "All other debts and claims" which are included among liabilities contemplated by the act may readily be calculated, and when the liabilities of the two classes are added together, they constitute the total liabilities against which the policy of the Pennsylvania law requires assets to be disclosed and capital unimpaired in order to insure solvency. Section 9.

I am of opinion that the difficulty in this case arises out of a confusion in the use of the words "liabilities" and "reserves," and "assets" and "reserves." The statute of Pennsylvania defines the liabilities against which reserves in the technical sense shall be maintained, namely, "reinsurance" or "unearned premiums" in case of a fire insurance company, "reinsurance" plus "unpaid losses," in casualty companies, and requires also that, against all other liabilities, assets shall appear in order to show solvency. Liabilities of the latter class, until met and paid, cannot escape federal taxation by deducting them from the gross income of the corporation. Liabilities of the former class cannot escape taxation by deduction from gross income, unless against such liabilities a reserve fund is specifically required by law.

It has been urged that if the act of June 1, 1911, be construed not to require of fire insurance companies a fund to be reserved against the item of "unpaid losses and claims," the very excellent rules and practice promulgated and pursued by the department of insurance of

the state of Pennsylvania, in ascertaining and enforcing the solvency of insurance companies for the protection of policy holders, will be disturbed, and in fact destroyed. I do not concede this to be true, for if the contention of the government were to prevail, the decision would not affect the department of insurance of the state of Pennsylvania, or disturb its rules and practice in the least. The result would simply be: First, that the plaintiff fire insurance company would not be permitted to escape taxation under the Corporation Excise Tax Law by making a deduction in one year for losses not yet determined, and thereafter conceivably deducting in the next year for the same losses when actually determined and paid; second, the plaintiff insurance company would be taxed only for the privilege of doing business after deducting for losses actually sustained when their amounts were precisely ascertained; and, third, the department of insurance of the state of Pennsylvania would proceed as before and require all insurance companies, seeking the privilege of doing business in Pennsylvania, to disclose assets equal to all liabilities, and stay solvent or stop business. There is no occasion for these results to be confused, as the questions presented in this controversy are separate and distinct. The first is a question for the department of insurance of the state of Pennsylvania, and is whether an insurance company is insolvent, and whether its business is being legally conducted. This fact may be ascertained, as it is now from time to time ascertained, without inquiry as to the requirements of the laws of Pennsylvania respecting the maintenance of reserve funds.

The other question is one for the United States Commissioner of Internal Revenue, and is whether anything more than a "reinsurance reserve" is required by the laws of Pennsylvania to be maintained by a fire insurance company as distinctively a reserve fund. If nothing more is found in the law, then the federal government can lay its tax and disallow deductions for unpaid losses and contingent expenses, without regard to the conduct of the insurance department of the state of Pennsylvania in treating the same items to determine the solvency of the company. I concur with the view expressed in the majority opinion that the fact that the plaintiff insurance company had a surplus neither determines what is required by the law of Pennsylvania with respect to reserve funds, nor gives to an insurance company the right to a deduction under the federal statute, when without a surplus it would be without such a right. It was upon the fact that the plaintiff insurance company had a surplus that the District Court disallowed the deduction, after having held, as this court holds, that the laws of Pennsylvania, when construed in the light of practice, require reserve funds against unpaid losses and claims of fire insurance companies. It is upon this point that I am embarrassed in finding myself at variance with the reasoning of both the trial court and the appellate court.

For the reasons that I have given, I am of opinion that the deductions were properly disallowed, and that recovery for the amounts paid should be denied.