NATIONAL LIFE & ACCIDENT INS. CO. v. CRAIG, Internal Revenue Collector.

(Circuit Court of Appeals, Sixth Circuit. June 4, 1918.)

No. 3108.

1. INTERNAL REVENUE ⬥═9—CONSTRUCTION—MEANING OF TERM "RESERVE FUND."

When a word which has a known legal meaning is used in a statute, it must be assumed that it is used in its legal sense, in the absence of an indication to the contrary; therefore the term "reserve funds," used in Excise Tax Law Aug. 5, 1909, § 38, must be given the signification known in the general law of insurance.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Reserve Fund.]

2. INTERNAL REVENUE ⬥═9—CORPORATION EXCISE TAX.

Under Acts Tenn. 1895, c. 160, §§ 1, 8, 16, relating to insurance companies, reserve funds are not required by law to be so maintained as to include additional sums reserved to satisfy unpaid losses accrued or prospective, and no deductions for amounts so reserved, though required by the insurance.commission, can be allowed under Excise Tax Law Aug. 5, 1909, § 38, in computing a Tennessee company's net income for taxation, though the act provided for deduction of any additions to reserve funds required by law.

In Error to the District Court of the United States for the Middle District of Tennessee; John E. McCall, Judge.

Action by the National Life & Accident Insurance Company against E. B. Craig, Collector of Internal Revenue. There was a judgment for defendant, and plaintiff brings error. Affirmed, save as to one uncontested item.

Thomas J. Tyne, of Nashville, Tenn., and J. M. Peebles, of Rupert, Idaho, for appellant.

Lee Douglas, U. S. Atty., and Marvin Campen, Asst. U. S. Atty., both of Nashville, Tenn., for appellee.

Before WARRINGTON and DENISON, Circuit Judges, and SATER, District Judge.

SATER, District Judge. The plaintiff, a Tennessee corporation doing a life, health, and accident insurance business in that state, brought this action against the defendant, as collector of internal revenue, to recover a part of the excise tax exacted of it for the years 1911, 1912, and 1913, under Act Aug. 5, 1909, c. 6, § 38, 36 Stat. 11, 112. Paragraph 1 of that section provides that every insurance company, organized under the laws of the United States or of any state, shall be subject to pay annually a special excise tax with

⬥═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

respect to the carrying on or doing business by such company, equivalent to one per centum upon the entire net income in excess of $5,000 received by it from all sources during such year, exclusive of certain amounts received by it as dividends, which for want of pertinency need not be noted. The controversy turns upon the italicized portion of the following excerpt from the second paragraph of such section:

"Such net income shall be ascertained by deducting from the gross amount of the income of such * * * insurance company, received within the year from all sources, * * * all losses actually sustained within the year and not compensated by insurance or otherwise, including a reasonable allowance for depreciation of property, if any, and in the case of insurance companies the sums other than dividends, paid within the year on policy and annuity contracts and *the net addition, if any, required by law to be made within the year to reserve funds.*"

The Tennessee statute (Act 1895, c. 160), which is applicable to the plaintiff company, confers on the insurance commissioner of Tennessee, as the chief executive and administrative officer of the state insurance department, large discretionary or quasi judicial functions and comprehensive supervisory control over all insurance companies. Section 16 of such act (section 3299, Shannon's Anno. Code) required the plaintiff, as well as other insurance companies, to file with the commissioner on blank forms furnished by him a statement or report exhibiting its financial condition on the 31st day of December, and also its business, for each of the above-mentioned years. The plaintiff and other companies engaged in like kinds of business were compelled to set forth in their annual reports and to reserve for the years above mentioned sums sufficient to meet their following accrued and unpaid liabilities: Death losses in process of adjustment or adjusted and not due; weekly losses; death losses and other policy claims resisted by the company; premiums paid in advance or unearned premiums; due or accrued salaries, rents, bills, agents' commissions, and legal and medical fees; unpaid taxes and interest on agents' bonds; and reserve for weekly disability. Plaintiff paid the excise tax for each of the years in question, excepting on the sums set apart to meet whatever liability it might have on the above-mentioned items. In 1915, the commissioner of internal revenue held that such sums were not required by law to be reserved for the purposes shown in its report to the commissioner of insurance and were not legally deductible from plaintiff's gross income, and compelled the plaintiff on account of them to make payment (which was properly protested) of the additional sum of $151.23 for 1911, $205.31 for 1912, and $460.55 for 1913.

Plaintiff's claim for a refund of the tax having been refused, this suit was thereupon brought. In the course of the hearing it was agreed that $278.74 of the sum paid represented a tax on the net addition to the reserve for premiums paid in advance and had been unlawfully exacted of the plaintiff. This item is therefore dismissed from further consideration. The District Court, relying on Insurance Co. of North America v. McCoach, 224 Fed. 657, 140 C. C. A. 167 (C. C. A. 3), awarded plaintiff judgment for the full amount

asked. Subsequently that case was reversed under the title of Mc-Coach v. Insurance Co. of North America, 244 U. S. 585, 37 Sup. Ct. 709, 61 L. Ed. 1333, after which, on a rehearing, the District Court gave plaintiff judgment for the conceded amount of $278.74, with interest from the date of its payment, but denied its right to recover the residue of $538.35. The case was then brought here on petition in error.

[1, 2] Congress did not attempt to define the term "reserve funds," as used in the Excise Tax Law of 1909. The rule is familiar that when a word which has a known legal meaning is used in a statute, it must be assumed that it is used in its legal sense, in the absence of an indication of a contrary intent. 26 Am. & Eng. Ency. Law, 607; Apple v. Apple, 1 Head (Tenn.) 348; State v. Smith, 5 Humph. (Tenn.) 394; Grogan v. Garrison, 27 Ohio St. 50, 63. It is clear, from Mr. Justice Pitney's opinion in the McCoach Case, 244 U. S. p. 586, 37 Sup. Ct. 709, 61 L. Ed. 1333, that the term "reserve funds," within the meaning of the act of Congress, bears the signification known to the general law of insurance. It necessarily follows that, unless "reserve funds" are in Tennessee "required by law" to be so maintained as to include the additional sums reserved to satisfy the items, accrued, unpaid or contingent, as indicated in the plaintiff's report to the insurance commissioner, recovery must be denied to the plaintiff.

Section 1 of the Tennesse act of 1895 (section 3274, Shannon's Anno. Code) provides that:

"The terms 'unearned premiums,' and 'reinsurance reserve,' and 'net value of policies,' or 'premium reserve,' severally intend the liability of an insurance company upon its insurance contracts other than accrued claims computed by rules of valuation established by" sections 3288-3291, Shannon's Anno. Code.

Section 8, which prescribes the method of valuing policies, is shown in the margin.[1] Subsequent to the enactment of that statute the Ten-

---

[1] "The insurance commissioner shall each year compute the net value on the 31st day of December of the preceding year of all outstanding policies of life insurance in companies authorized to make insurance on lives in this state upon the basis of the 'Combined Experience,' or 'Actuaries' Table' or 'American Experience Table' rate of mortality, with the interest at four per cent. per annum; and the aggregate net value so ascertained of the policies of any such company shall be deemed its liability on account of its policy obligations, other than accrued claims, to provide for which it shall hold funds, in secure investments, of an amount equal to such net value above all its other liabilities. * * * To determine the liability upon its contracts of insurance of an insurance company other than life, the insurance commissioner shall require such company to charge, as the liability for reinsurance of outstanding policies, fifty per cent. of the premium received on policies or risks having not more than one year to run, and a pro rata of all premiums received on policies or risks having more than one year to run. The insurance commissioner shall allow the credit of an insurance company in the account of its financial condition only such assets as are or can be made available for the payment of losses in Tennessee, but may credit any deposits of funds of the company set apart as security for a particular liability. He shall not allow stockholders' obligations of any description as part of the assets or capital of any insurance company, unless the same are secured by competent collateral."

nessee Court of Chancery Appeals, in Fry v. Provident Sav. L. Assur. Soc., 38 S. W. 116, 126, adopted the following as a correct definition of the term "reserve fund":

"When the word or term is applied to a level rate policy, it means a sufficient per centum of the annual premiums to meet when invested at a given rate of interest, all present and prospective liability on account of the particular policy. When applied to term insurance, it means the entire mortuary premiums collected for a particular term."

In Insurance Co. v. Heidel, 8 Lea (Tenn.) 488, 495, 496, and Insurance Co. v. Mathews, 8 Lea (Tenn.) 499, it is said that a part of every premium on a life policy is absorbed in the running expenses of the business; a part is the compensation of the insurers for the risk during the period for which the premium is paid, to be used for the payment of loss on other policies or divided as profits; and the remainder is accumulated on interest as a reserve fund, to respond to the demands of the particular policy and constitutes its equitable value. See also Ewing v. Coffman, 12 Lea (Tenn.) 79, 83, 84; Smith v. St. Louis Mut. L. Ins. Co., 2 Tenn. Ch. 729, 741. The method of determining the reserve fund and the definition of it given in the Fry Case are in effect the same as obtains elsewhere. State v. Vandiver, 213 Mo. 187, 213, 214, 111 S. W. 911, 15 Ann. Cas. 283 (which adopted the above-quoted language in the Fry Case); New York L. Ins. Co. v. Statham, 93 U. S. 24, 34, 23 L. Ed. 789; Nielsen v. Provident L. Assur. Soc., 139 Cal. 332, 73 Pac. 168, 96 Am. St. Rep. 146, 149; Detroit Fire & Marine Ins. Co. v. Hartz, 132 Mich. 518, 520, 521, 94 N. W. 7; Bankers' L. Ins. Co. v. Howland, 73 Vt. 1, 48 Atl. 435, 57 L. R. A. 374; New Haven Trust Co. v. Gaffney, 73 Conn. 480, 485, 47 Atl. 760; Prudential Ins. Co. v. Chestnut, 8 Ga. App. 781, 68 S. E. 952; Vance, Insurance, 39; Bacon, Life and Acc. Ins. (4th Ed.) § 77.

As we understand the plaintiff's position, reliance is not had on any Tennessee statute (and none is named) which specifically requires that funds, other than the reserve fund as above defined, shall be set apart to satisfy unpaid expenses and liabilities in conformity to the state's practice, but rather on the general tenor and policy of the act of 1895. A résumé of its provisions would unduly prolong this opinion, but briefly its paramount object is the protection of policy holders (Insurance Co. v. Craig, 106 Tenn. 621, 62 S. W. 155), and it casts upon the insurance commissioner the duty of seeing that insurance companies transacting business in the state are solvent and comply with its laws. One of the purposes of the annual statements submitted to him by insurance companies is to determine their net assets or funds available for the payment of their obligations in the state, which funds, by the terms of section 1 of the act, include uncollected and deferred premiums, not more than three months due on policies actually in force, after deducting from such funds all unpaid losses and other debts and liabilities, inclusive of policy liability and exclusive of capital. Section 16 provides that such annual statements shall be in the form designated and as specified by the commissioner, and that assets and liabilities shall be computed and

allowed in accordance with the rules mentioned in the act. The commissioner is empowered to examine in detail into all the affairs and transactions of such companies for the purpose of determining their financial condition. He is given exclusive authority in the first instance to grant or refuse the requisite permission to do business in the state and he is clothed with power to withdraw that permission after it has been granted. If he is of the opinion that a foreign insurance company is financially unsound, or has failed to comply with the law or to perform its legal obligations, or that the actual funds of any life insurance company, exclusive of its capital, are less than its liabilities, he is required to revoke its permission to engage in business within the state, and without giving notice to the company, if the ground of revocation be financial unsoundness or deficiency in assets. For like reasons he may through the state's Attorney General seek injunctive relief against a domestic company's further prosecution of business.

It is asserted that in view of the foregoing and other kindred statutory provisions the commissioner of insurance is authorized to fix and require the additional reserves to meet the heretofore mentioned liabilities, actual and contingent, shown in the annual statements submitted to him, and that his power so to do is sanctioned in Insurance Co. v. Craig, 106 Tenn. 640–642, 62 S. W. 155, 159, in which it is said:

"Where the official is authorized by an effective law to do or not to do a given thing upon his own investigation or otherwise, the courts cannot coerce or restrain his action in reference thereto, but must permit him, in the sphere in which the law has assigned to him, to exercise a free and untrammeled judgment and discretion. It is even his prerogative, in the first instance to construe the laws under and within which he acts, and the courts, although of the opinion that his construction is incorrect, will not interfere by mandamus or injunction. * * * The rule of noninterference, on the part of the courts, with the free exercise of discretionary functions by public officials has been applied in cases too numerous to mention (citing High's Extra. Leg. Rem. § 44c). * * * But it must always be remembered that the public functionary of the class under consideration can act independently of the courts only to the extent that the law gives him that power. The law is the source of his authority, and he has no discretion beyond that conferred. All of his acts must be within the limits of that authority, and of this the courts must finally judge. Though he may undoubtedly and in every instance construe the law for himself as to discretionary matters actually within the law, he cannot by interpretation, however conclusive to his own mind, bring within his discretion any matter that is not in fact so placed by the law when rightly interpreted by the courts."

A fair interpretation of the act in question does not warrant the conclusion thus pressed upon us. The commissioner, to protect the policy holders of his state and to maintain in a secure financial condition the insurance companies reporting to him, may well prescribe the extent and forms of reports to be made by them. The only "reserve funds" "required by law" are those mentioned and for which provision is made in sections 1 and 8. We find no provision in the statute which requires the reserving of other and additional funds to meet unpaid losses and liabilities, accrued or prospective. Regarding the law as a whole and considering its minute and comprehensive de-

tails, the omission of all allusion to any other "reserve funds" and of any provision for their creation is significant. Had the Legislature intended to require others, it must be presumed that its will would have found appropriate expression.

Nor do we think Insurance Co. v. Craig is helpful to the plaintiff. The existence of a statutory provision for the creation of "reserve funds" other than those known to the general law of insurance and mentioned in sections 1 and 8, which is the immediate question before us, was not there involved or considered. The plaintiff in that case was an incorporated English company. Its recognition in Tennessee was purely a matter of comity. It could transact business in that state only on such terms and conditions as the state saw fit to impose, and its license to do business within its borders could be revoked whenever the state chose and upon whatever grounds and through whatever agency the Legislature might prescribe. After reinsuring the risks and policies of a New York company and giving notice of that fact to that company's general agency and policy holders and to the insurance commissioner, it repudiated its contract on the ground that the New York company had failed to perform. The commissioner demanded that the English company, as to Tennessee policy holders, retract its action declaring the reinsurance contract null and void and resume its former relation to them, whatever such relation may have been, else its permission to transact business in the state would be revoked for noncompliance with the law. Injunctive relief was sought, but denied, for the reason (as appears from the opinion and from the explanation of it found in State v. Standard Oil Co., 120 Tenn. 86, 143, 110 S. W. 565) the statute empowered the commissioner, without proceedings in any of the courts, to exclude a foreign insurance company for certain violations of law, even after it had been duly licensed to transact business in the state. The Craig Case makes it clear that the commissioner's interpretation of the law as to other than discretionary matters is not binding upon, but in an appropriate case is subject to review by, the courts. The practice indulged by the commissioner has not been sanctioned by any decision of the Supreme Court of his state.

The deduction from the gross amount of an insurance company's income, of funds to be reserved, is specifically limited by the federal Excise Tax Law to the net addition required by law to be made within the year from such income to the company's reserve funds. The exercise of abundant caution to maintain such companies in a solvent condition is not within its purview. As said in the McCoach Case, 244 U. S. 589, 37 Sup. Ct. 711, 61 L. Ed. 1333, by which this case is ruled:

"The act of Congress * * * deals with reserves not particularly in their bearing upon the solvency of the company, but as they aid in determining what part of the gross income ought to be treated as net income for purposes of taxation. There is a specific provision for deducting 'all losses actually sustained within the year and not compensated by insurance or otherwise.' And this is a sufficient indication that losses in immediate contemplation, but not as yet actually sustained, were not intended to be treated as part of the reserve funds; that term rather having reference to the funds ordinarily held as against the contingent liability on outstanding policies."

Our conclusion is that the reserves, held against liabilities and losses, incurred and contingent, shown in the plaintiff's annual statements, are not "required by law" in Tennessee within the meaning of the act of Congress, and the judgment of the District Court is therefore affirmed.