McCOACH, COLLECTOR OF INTERNAL REVENUE, v. INSURANCE COMPANY OF NORTH AMERICA.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 475. Argued March 14, 1917.—Decided June 11, 1917.

A fire and marine insurance company in Pennsylvania is not required to maintain a reserve against unpaid losses by the law of that State (P. L. 1911, p. 607), and, therefore, amounts added by it to such a reserve may not be deducted in determining the company's taxable net income under § 38 of the Federal Corporation Excise Tax Act of August 5, 1909, c. 6, 36 Stat. 11, 112.

224 Fed. Rep. 657, reversed.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Wallace* for petitioner.

*Mr. B. F. Pepper*, with whom *Mr. G. W. Pepper* and *Mr. Bayard Henry* were on the brief, for respondent.

MR. JUSTICE PITNEY delivered the opinion of the court.

This was an action brought by respondent, a fire and marine insurance company of the State of Pennsylvania, to recover a part of the excise taxes exacted of it for the years 1910 and 1911 under the Act of August 5, 1909, c. 6, § 38, 36 Stat. 11, 112. As the case comes here, only two items are in dispute, one for each of the years mentioned, representing the tax upon amounts added in each of those years to that part of what are called its "reserve funds" that is held against accrued but unpaid losses.

The act imposed upon every insurance company organ-

ized under the laws of the United States or of any State
an annual excise tax with respect to the carrying on or
doing business, equivalent to one per centum upon its
entire net income over and above $5,000, with exceptions
not here pertinent. The second paragraph of § 38 pro-
vided: "Such net income shall be ascertained by deducting
from the gross amount of the income of such . . . in-
surance company . . . (second) all losses actually
sustained within the year and not compensated by in-
surance or otherwise, including a reasonable allowance for
depreciation of property, if any, and in the case of in-
surance companies the sums other than dividends, paid
within the year on policy and annuity contracts *and the
net addition, if any, required by law to be made within the
year to reserve funds.*"

The italics indicate the particular words upon which
the controversy turns; the question being whether, within
the meaning of the act of Congress, "reserve funds," with
annual or occasional additions, are "required by law,"
in Pennsylvania, to be maintained by fire and marine
insurance companies, other than the "unearned premium"
or "reinsurance reserve," known to the general law of
insurance.

The District Court rendered a judgment in plaintiff's
favor, excluding however the disputed items (218 Fed.
Rep. 905); on plaintiff's writ of error the Circuit Court of
Appeals reversed this judgment, with instructions to
allow the claim in full (224 Fed. Rep. 657); and the case
was brought here by writ of certiorari.

Plaintiff was chartered by a special act, but is subject
to the state insurance law. Its business is confined to fire
and marine insurance.

The law of Pennsylvania (Act of June 1, 1911, P. L.
607, 608) creates a State Insurance Commissioner with
supervisory control over the companies; provides in § 4
that he shall see that all the laws of the Commonwealth

respecting insurance companies are faithfully executed, authorizing him to make examinations, to have access to all the books and papers of any company, to examine witnesses relative to its affairs, transactions, and condition, to publish the result of his examination when he deems it for the interest of the policy-holders to do so, and to suspend the entire business of any company during its non-compliance with any provision of law obligatory upon it, or whenever he shall find that its assets are insufficient to justify its continuance in business; and whenever he finds any company to be insolvent or fraudulently conducted, or its assets insufficient for the carrying on of its business, he is to communicate the facts to the Attorney General. By § 15 every insurance company is required to file annual statements with the commissioner, upon blank forms to be furnished by him such as shall seem to him best adapted to elicit a true exhibit of their financial condition.   Sections 7, 8, and 9, set forth in the margin,[1]

---

[1] Section 7. In determining the liabilities upon its contracts of insurance of any insurance company other than life insurance, and the amount such company should hold as a *reserve for reinsurance*, he shall, for *casualty* insurance companies, charge one-half of the premium on all annual policies written within one year, and on policies written for more than one year he shall charge one-half of the current year's premiums, plus the whole of the premiums for subsequent years. For *fire* insurance companies he shall charge fifty per centum of the premiums written in their policies upon all unexpired risks that have one year, or less than one year, to run, and a pro rata of all premiums on risks having more than one year to run; on perpetual policies he shall charge the deposit received, less a surrender charge of not exceeding ten per centum thereof. For *marine* and inland risks he shall charge fifty per centum of the premium written in the policy upon yearly risks, and the full amount of the premium written in the policy upon all other marine and inland risks not terminated.

Section 8. He shall, in calculating the reserve against unpaid losses of *casualty* companies, other than losses under liability policies, set down by careful estimate in each case the loss likely to be incurred against every claim presented, or that may be presented in pursuance

make specific provisions for ascertaining the reserve for different classes of companies other than life insurance companies. Another act of the same date (P. L. 1911, p. 599) provides for judicial proceedings at the instance of the insurance commissioner looking to the dissolution of insolvent and delinquent companies. Its provisions need not be quoted.

A previous act (April 4, 1873, P. L. 20, 22), required a specific reinsurance reserve against unexpired risks on fire, marine, and inland policies. The Act of 1911, just quoted, requires the maintenance of a substantially similar reserve; and, with respect to casualty companies and these only, that a reserve be maintained against unpaid losses, based upon the amount of claims presented. The reference in § 9 to "reinsurance and loss reserves, as above defined" is limited by what precedes it; and the section deals not alone with "reserves," but requires "all other debts and claims" to be accounted as liabilities.

It appears that under this legislation, and under previous statutes in force since 1873, the insurance commissioner has required plaintiff and similar companies to return each year, as an item among their liabilities, the net amount of unpaid losses and claims, whether actually adjusted, in process of adjustment, or resisted. And, although this practice has not been sanctioned by any decision of the Supreme Court of the State, it is relied upon as an administrative interpretation of the law.

---

of notice from the insured of the occurrence of an event that may result in a loss; and the sum of the items so estimated shall be the total amount of the reserve. . . .

Section 9. Having charged as a liability the reinsurance and loss reserves, as above defined for insurance companies of this Commonwealth other than life, and adding thereto all other debts and claims against the company, the Commissioner shall, in case he finds the capital of the company impaired twenty per centum, give notice to the company to make good the capital within sixty days. . . .

Conceding full effect to this, it still does not answer the question whether the amounts required to be held against unpaid losses, in the case of fire and marine insurance companies, are held as "reserves," within the meaning of the Pennsylvania law or of the act of Congress, however they may be designated upon the official forms. As already appears, the Pennsylvania act specifically requires debts and claims of all kinds to be included in the statement of liabilities, and treats them as something distinct from reserves. The object is to exercise abundant caution to maintain the companies in a secure financial position.

The act of Congress, on the other hand, deals with reserves not particularly in their bearing upon the solvency of the company, but as they aid.in determining what part of the gross income ought to be treated as net income for purposes of taxation. There is a specific provision for deducting "all losses actually sustained within the year and not compensated by insurance or otherwise." And this is a sufficient indication that losses in immediate contemplation, but not as yet actually sustained, were not intended to be treated as part of the reserve funds; that term rather having reference to the funds ordinarily held as against the contingent liability on outstanding policies.

In our opinion the reserve against unpaid losses is not "required by law," in Pennsylvania, within the meaning of the act of Congress.

It results that the judgment of the Circuit Court of Appeals should be reversed and that of the District Court affirmed.

*Reversed.*

THE CHIEF JUSTICE and MR. JUSTICE McKENNA dissent.

MR. JUSTICE McREYNOLDS took no part in the consideration or decision of this case.