UNITED STATES MERCHANTS & SHIPPERS INSURANCE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10439.   Promulgated August 1, 1928.

*Dean Acheson, Esq.*, for the petitioner.
*John D. Foley, Esq.*, for the respondent.

## OPINION.

SMITH: This proceeding presents for determination which of the methods employed by the petitioner and the respondent in computing earned premium income and losses sustained during the taxable year and not compensated for by insurance or otherwise should be used in determining income-tax liability for the year 1921.

For the calendar year 1921, all insurance companies, other than life, were subject to the corporation income tax imposed by section 230 of the Revenue Act of 1921 and they were entitled to the deductions allowed by section 234 of the same Act. In our determination of this proceeding it will not be necessary to consider any deductions other than those authorized by section 234(a), paragraphs (4) and (10) as follows:

(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise; * * *

(10) In the case of insurance companies (other than life insurance companies), in addition to the above (unless otherwise allowed): (A) The net addition required by law to be made within the taxable year to reserve funds (including in the case of assessment insurance companies the actual deposit of sums with State or Territorial officers pursuant to law as additions to guarantee or reserve funds); and (B) the sums other than dividends paid within the taxable year on policy and annuity contracts. * * *

In addition to the foregoing sections the petitioner was subject to the provisions of sections 21 and 22 of the New York Insurance Law, which, so far as are here relevant, provide:

21. *When corporation to be deemed insolvent.*—Every insurance corporation specified in articles two, three, four and five of this chapter, whose assets and credits are not sufficient to reinsure its outstanding risks in a solvent insurance corporation, shall be deemed insolvent and may be proceeded against as an insolvent corporation.

22. *Reinsurance.*—Every insurer authorized to issue policies in this state may reinsure in any other insurer any part or all of any risk or risks, other than life, assumed by it; but such reinsurance, unless effected (a) with an insurer authorized to issue policies in this state, or (b) with an insurer similarly authorized in another state, territory or district of the United States and showing the same standards of solvency and meeting the same statutory and departmental regulations which would be required or prescribed of such insurer were it at the time of such reinsurance authorized in this state to issue policies covering risks of the same kind or kinds as those reinsured, shall not reduce the taxes to be paid by or the reserve or other liability to be charged to the ceding insurer; provided that nothing in this section shall be construed to permit to a ceding insurer any reduction of taxes through reinsurance effected with an insurer not authorized to issue policies in this state. In case such reinsurance is effected with an insurer so authorized or so recognized for reinsurance in this state, the ceding insurer shall thereafter be charged on the gross premium basis with an unearned premium liability representing the proportion of such obligation retained by it, and the insurer to which the business is ceded shall be charged with an unearned premium liability representing the proportion of such obligation ceded to it calculated in the same way.

The Superintendent of Insurance for the State of New York during the years 1920 and 1921 required stock, fire and marine insurance companies as a condition precedent to the transaction of business in the State of New York to maintain reserves to cover the following liabilities:

A. Loss reserve, including all unpaid and estimated expense of investigations and adjustment thereof, less admitted reinsurance.

B. Reserve for unearned premiums as required by statute and departmental regulation; i. e., (a) on fire insurance risks a sum equal to the actual unearned premium on the policies in force calculated on the gross sum without any deduction except for admitted reinsurance, and (b) on marine hull risks calculated in the same manner and on marine cargo risks 100 per cent of the last month's gross premium writings.

C. Reserve for all other outstanding liabilities due or accrued.

The words " admitted reinsurance " in the above regulations refer to reinsurance in corporations admitted or qualified to do business in the State of New York within the provisions of section 22 of the New York Insurance Law.

The Superintendent of Insurance placed upon the inside of the covers of the annual statements required by him for the years 1920 and 1921 the following instruction:

(16) REINSURANCE: Premium reserves on REINSURANCE in force in companies NOT AUTHORIZED to transact business in NEW YORK STATE must NOT be taken credit for in computing the unearned premium liability of the company as carried in this statement, nor should credit be taken for amounts due from UNAUTHORIZED companies for reinsurance on outstanding losses, except that credit may be taken for reinsurance in those companies which qualify under subdivision (b) of section 22 of New York Insurance Law.

The petitioner contends that under the Revenue Act of 1921 net earned premiums should be computed by adding to net premiums received in 1921 the amount of unearned premiums disclosed by its books as at December 31, 1920, which the company would earn in the future, and deducting from the figure thus ascertained the amount of unearned premiums disclosed by its books as at December 31, 1921. In computing the deduction on account of losses sustained and not compensated for by insurance or otherwise it claims that the amount of unpaid losses disclosed by its books as at December 31, 1921, for which the company was liable and for which it would not be compensated by insurance or otherwise, should be added to the amount of losses paid during the year, and that from this figure there should be deducted the amount of unpaid losses disclosed by its books as at December 31, 1920, for which it was liable and for which it would not be compensated by insurance or otherwise.

Counsel for the petitioner points out that the books were kept in accordance with the accrual method of accounting and argues that the above methods of computing earned premium income and deduc-

tible losses are the only permissible ones where the books are kept on such basis. It is further contended in behalf of the petitioner that it is immaterial that the regulations of the Superintendent of Insurance required the setting up in the books and the reporting to such superintendent of reserves that could not be credited with any deduction on account of reinsurance placed with an unauthorized or unqualified company.

The respondent in computing net income employed the unearned premium reserves and the reserves for unpaid losses reported to the Superintendent of Insurance as at December 31, 1920, and December 31, 1921. Counsel for the respondent argued in his brief that the disposition of this proceeding will hinge upon the effect to be attributed to released reserves in determining the tax liability. He points out that at December 31, 1920, the unearned premium reserve computed in accordance with the regulations of the Superintendent of Insurance for the State of New York amounted to $36,789.63; that this was the net amount of the reserve arrived at by deducting from unearned premiums the reinsurance in companies authorized to do business in the State of New York but ignoring reinsurance placed with companies not so authorized; that this reinsurance in unauthorized companies amounted, on December 31, 1920, to $23,-789.86; that at December 31, 1921, the unearned premium reserve computed in accordance with the regulations of the Superintendent of Insurance for the State of New York amounted to $25,691.40; that at December 31, 1921, the petitioner had no reinsurance placed with companies not authorized to do business in the State of New York; and that by reason of this fact when the risks reinsured in unauthorized companies terminated during the year 1921 the premiums which the petitioner had received for accepting these risks became in a real sense earned for the first time and were released to its free and general use in that year and increased its free assets in that year In support of this position the respondent relies upon certain language employed by the Supreme Court in *Maryland Casualty Co.* v. *United States*, 251 U. S. 342.

The United States Supreme Court in *McCoach* v. *Insurance Co. of North America*, 244 U. S. 585, had for its consideration a question involving the construction of the second paragraph of section 38 of the Federal Corporation Excise Tax Act of August 5, 1909, which provided that the net income of every insurance company should:

\* \* \* Be ascertained by deducting from the gross amount of the income of such \* \* \* insurance company \* \* \* (second) all losses actually sustained within the year and not compensated by insurance or otherwise, including a reasonable allowance for depreciation of property, if any, and in the case of insurance companies the sums other than dividends paid within the year on policy and annuity contracts and the net addition, if any, required by law to be made within the year to reserve funds.

In its construction of the section of the act under consideration the court said:

The act of Congress, on the other hand, deals with reserves not particularly in their bearing upon the solvency of the company, but as they aid in determining what part of the gross income ought to be treated as net income for purposes of taxation. There is a specific provision for deducting "all losses actually sustained within the year and not compensated by insurance or otherwise." And this is a sufficient indication that losses in immediate contemplation, but not as yet actually sustained, were not intended to be treated as part of the reserve funds; that term rather having reference to the funds ordinarily held as against the contingent liability on outstanding policies.

In *Maryland Casualty Co.* v. *United States, supra,* the Supreme Court had for determination the question should, in the case of an insurance company, the decrease in the amount of reserve funds required by law for the year 1913 from the amount required for 1912 be treated as "released reserve" and charged to the company as income for 1913 under the Income Tax Act of 1913, which allowed the deduction from gross income of the "net addition, if any, required by law to be made within the year to reserve funds." It appears that in 1913 there was a decrease in the "unpaid liability loss reserve" which exceeded an increase in the "unearned premium reserve" by over $270,000, and this amount the Government added to the gross income of the claimant for that year, calling it "released reserve" on the theory that the difference in the amount of the reserves for the two years released the decrease to the claimant so that it could use it for its general purposes, and, therefore, constituted free income for the year 1913, in which the decrease occurred.

In answering the question before it the court, after holding contrary to *McCoach* v. *Insurance Co. of North America, supra,* that such rules and regulations of State insurance departments as are promulgated in the exercise of an appropriate power conferred by statute, and which do not conflict with express statutory provisions, have the force and effect of law, said:

Reserves, as we have seen are funds set apart as a liability in the accounts of a company to provide for the payment of reinsurance of specific, contingent liabilities. They are held not only as security for the payment of claims but also as funds from which payments are to be made. The amount "reserved" in any given year may be greater than is necessary for the required purposes, or it may be less than is necessary, but the fact that it is less in one year than in the preceding year does not necessarily show either that too much or too little was reserved for the former year,—it simply shows that the aggregate reserve requirement for the second year is less than for the first, and this may be due to various causes. If, in this case, it were due to an over-estimate of reserves for 1912 with a resulting excessive deduction for that year from gross income and if such excess was released to the general uses of the company and increased its free assets in 1913, to that extent it should very properly be treated as income in the year in which it became so available, for the reason that in that year, for the first time, it became free income, under the system

for determining net income provided by the statute, and the fact that it came into the possession of the company in an earlier year in which it could be used only in a special manner, which permitted it to become nontaxable would not prevent its being considered as received in 1913 for the purposes of taxation, within the meaning of the act.

The findings of fact in this case, however, do not show that the diminution in the amount of required reserves was due to excessive reserves in prior years or to any other cause by which the free assets of the company were increased in the year 1913, and the following finding of fact makes strongly against such a conclusion:

"The decrease in employers' liability loss reserve for 1913, designated as 'released reserve' did not in any respect affect or change claimant's gross income or disbursements, as shown by the State Insurance Reports."

It would not be difficult to suggest conditions under which the statutory permit to deduct net additions to reserve funds would result in double deduction in favor of an insurance company, but such deductions can be restored to income again only where it is clearly shown that subsequent business conditions have released the amount of them to the free beneficial use of the company in a real, and not in a mere bookkeeping sense. If this seemingly favorable treatment of insurance companies is to be otherwise corrected or changed, it is for Congress, and not for the courts, to amend the law.

Since the findings of fact before us do not make the clear showing, which must be required, that the statutory deduction of net reserves in prior years was restored to the free use of the claimant in 1913, it should not have been charged as income with the decrease in that year, and, on the record before us, the holding of the Court of Claims must be reversed.

In *United States* v. *Boston Insurance Co.*, 269 U. S. 197, the Supreme Court had before it the question whether, within the meaning and intent of the Revenue Act of 1916, the net additions made by an insurance company to its reserve funds in pursuance of the requirements of the Insurance Law of the State of New York and of the same regulations of the Superintendent of Insurance for the State of New York as are before us in the instant case to cover accrued but unsettled loss claims, may be said to be such a fund as comes within the meaning of the term "reserve funds" as such term appears in that act, which provided for the deduction from gross income, in determining net income subject to tax, of—

All losses actually sustained and charged off within the year and not compensated by insurance or otherwise, * * * and (c) in the case of insurance companies, the net addition, if any, required by law to be made within the year to reserve funds and the sums other than dividends paid within the year on policy and annuity contracts. * * *

The court held that the term "reserve funds" does not embrace funds held by a fire and marine insurance company, as required by the Superintendent of Insurance for the State of New York, to cover accrued but unsettled claims for losses. In the course of its opinion the court said:

It follows from *McCoach* v. *Insurance Co.* that the permitted deductions specified by § 12, Act 1916, do not necessarily include anything which may be denomi-

nated "reserve fund" by state statute or officer. We there distinctly ruled that the "reserve fund" of the Federal Act did not include something held by a fire and marine insurance company to cover accrued but unsettled claims for losses. We adhere to and reaffirm that doctrine. * * *

\* \* \* \* \* \* \*

The *Maryland Casualty Company's Case* involved many items of complicated returns and reassessments. The record is confused, but the findings supply no adequate ground for any holding contrary to the general doctrine which we had theretofore approved. * * *

While the respondent contends that, because there was no reinsurance in force with unauthorized or unqualified companies at the close of the year 1921, there was a release to the free use and benefit of the company of the difference between the amount of unearned premiums disclosed by its books as at December 31, 1920, which the company might earn in the future and the amount of unearned premiums reported to the Superintendent of Insurance as at December 31, 1920, it does not appear that the Superintendent of Insurance directed that funds to meet such liability should be kept separate and distinct from other assets. On the contrary such liability was one of the liabilities which were specified by book entries as, (1) reserve to meet liabilities for unearned premiums; (2) unpaid loss claims; and (3) all other outstanding liabilities, due or accrued. In our opinion any release of reserves occasioned by a discontinuance of the previous practice of reinsuring in unauthorized companies was a release in a bookkeeping, but not in a real, sense.

Section 212(b) of the Revenue Act of 1921 provides in part as follows:

(b) The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income.

In view of the fact that the petitioner kept its books in accordance with the accrual method of accounting, and in view of the requirements of the Superintendent of Insurance for the State of New York, the question arises as to whether the petitioner's books of account correctly reflect net income or whether the reports made to the Insurance Department of the State of New York more clearly reflect income. Nothing was brought out in the evidence to the effect that the books of account of the petitioner for the year 1921 did not clearly reflect its net income for that year.

The brief of the respondent proceeds upon the theory that in some prior years the petitioner may have been permitted under the law and the regulations in force to have deducted from gross income as a

net addition to reserve funds some part of the difference between the unearned premiums shown by the petitioner's books of account at December 31, 1920, and the unearned premium reserve shown in the published reports of the New York State Insurance Department on the same date. We think, however, that this argument has no material bearing upon the question in issue before us. We have no proof that in years prior to 1921, the petitioner derived any benefit from the deduction from gross income of a net addition to reserve funds. Any assumption that it did might be contrary to fact, and in any event we can not be concerned with the method employed in computing taxable net income for the year 1920, inasmuch as that year is not before us. According to the petitioner's books of account the unearned premiums at December 31, 1921, namely, $25,691.40, were in excess of the unearned premiums at January 1, 1921, namely, $12,999.77. Nevertheless, the petitioner is not claiming the right to deduct from gross income any amount as a net addition to reserve funds. We are of the opinion that the petitioner's books of account and its return for 1921 made in accordance therewith, clearly reflect net income.

The second question relates to the losses sustained during the year 1921. The respondent, following the report made by the petitioner to the Insurance Department of the State of New York, has reached the amount of sustained losses upon the basis of that report rather than upon the basis of the petitioner's books of account. In our opinion the respondent clearly erred in taking into account in the determination of losses sustained any amount set up by the Insurance Department of the State of New York as a liability for unreported losses. The evidence also shows that the Superintendent of Insurance of New York required that marine insurance companies in New York State should set up as a liability in their annual statements a reserve for unpaid losses less admitted reinsurance. Thus the reserve for unpaid losses required in the annual statement made to the superintendent was the amount of any such loss less the amount which would be paid through reinsurance by a corporation meeting the requirements which would enable it to engage in business in New York State. If part of the loss was reinsured with and would be paid by a corporation which would not meet these requirements, the company reporting had to charge itself with the entire loss. There was thus this vital difference between the unpaid loss liability set up under the requirement of the New York Superintendent and the unpaid losses appearing on petitioner's books. The latter represented losses not compensated for by insurance or otherwise. The unpaid loss liability required by the New York Superintendent represented not only losses which the petitioner had sustained and must pay but also the amount of reinsurance recoverable by petitioner from

companies of which the New York Superintendent did not approve. The amount of the losses sustained by the petitioner during the year 1921 was $104,017.18, the amount reported by petitioner in its income-tax return for 1921.

The correction of the above errors cancels the net income determined by the respondent in the amount of $14,139.36.

Reviewed by the Board.

*Judgment of no deficiency will be entered for the petitioner.*