894

THE INDEPENDENT LIFE & ACCIDENT INSURANCE COMPANY, PETI-
TIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 105769. Promulgated October 15, 1942.

*Walter E. Barton, Esq.,* and *Lee Guest, Esq.,* for the petitioner.
*J. Marvin Kelley, Esq.,* for the respondent.

896

OPINION.

Leech: The principal issue is whether petitioner is taxable as a life insurance company under section 201 (a) of the Revenue Acts of 1934, 1936, and 1938,[1] as contended by petitioner, or as an insurance company other than life or mutual, under section 204 of those acts, as determined by respondent.

The Florida statute[2] distinguishes sick and funeral benefit companies from life insurance companies. While petitioner may have been classified by Florida as the former, it may still be true that its business is that of life insurance within the meaning of the Federal revenue acts. See *Commissioner* v. *Luquire Burial Association Co.*, 102 Fed. (2d) 89; *Helvering* v. *Oregon Mutual Life Insurance Co.*, 311 U. S. 267. However, this is not enough to bring petitioner within section 201 (a). It must also comply, at least, with the requirements as to reserves which, under section 201 (a), mean the same as under section 203 (a) (2). *Standard Industrial Life Insurance Co. of Louisiana, Inc.*, 42 B. T. A. 1011. See also Regulations 94, and Regulations 101, art. 201 (a)–1.

Petitioner made additions to its reserves in each year so that the total would be not less than 3 percent of gross premiums received in that year. It contends that this was in accordance with the Florida statute, *supra*, and that therefore it is a "life insurance company" within the purview of section 201 (a), *supra*. It might well be doubted

---

[1] SEC. 201. TAX ON LIFE INSURANCE COMPANIES.

(a) DEFINITION.—When used in this title the term "life insurance company" means an insurance company engaged in the business of issuing life insurance and annuity contracts (including contracts of combined life, health, and accident insurance), the reserve funds of which held for the fulfillment of such contracts comprise more than 50 per centum of its total reserve funds.

[2] Sec. 6264, Compiled General Laws of Florida, 1927:

"*Percentage for reserve.*—On December 31, 1925, and annually thereafter, each association, corporation or company transacting the business of sick and funeral benefit insurance in this State, shall set aside as a reserve for the protection of all such policyholders, an amount not less than three per cent. of the gross collections from policyholders during the current year. Associations, corporations or companies organized under the laws of this State shall maintain with the Treasurer of Florida for the protection of all policyholders of this class an amount equal to said reserve * * *. The State Treasurer shall require life insurance companies to set aside such reserves on life and industrial business as shall be in accordance with any accepted and recognized standards, and shall require companies writing insurance against loss by fire and other hazards, fidelity and surety bonding and indemnity coverage, to set aside the unearned portion of premiums in force, computed according to the usual methods, for the protection of their policyholders. * * *"

whether this reserve met the requirements of the Florida statute, which seems to require that there be set aside annually an amount not less than 3 percent of gross premiums received during that year. However, petitioner's statements showing its reserves were accepted by the Insurance Commissioner of Florida without question and we therefore pass this point. The respondent concedes that petitioner's reserves were held for the fulfillment of the policy contracts, but he contends that "reserve" as used in the Federal revenue acts means an actuarial reserve based upon standard mortality tables. This the Florida statute requires for life insurance companies, but not for "sick and funeral benefit" companies such as petitioner.

We agree with respondent. It is clear that, as used in sections 201 (a) and 203 (a) (2), the word "reserve" has a technical meaning peculiar to the law of insurance and is not anything which a state statute or officer may so designate. *Helvering* v. *Inter-Mountain Life Insurance Co.*, 294 U. S. 686; *Helvering* v. *Illinois Life Insurance Co.*, 299 U. S. 88; *McCoach* v. *Insurance Co. of North America*, 244 U. S. 585; *United States* v. *Boston Insurance Co.*, 269 U. S. 197; *Minnesota Mutual Life Insurance Co.* v. *United States*, 66 Ct. Cls. 481. A reserve for a life insurance policy is built up so that in future years as the probabilities of death of the insured increase the premium may remain level. The amount of the reserves is actuarially computed according to recognized tables of mortality and with an assumed rate of interest. The reserve here was not computed upon the basis of any mortality table. It was fixed at a flat rate of 3 percent of gross premiums. Although this fulfilled the requirement of the Florida statute, we do not think it is within the technical meaning of "reserve" as used in the revenue acts. *Mothe Burial Benefit Life Insurance Co.* v. *Fontenot*, 46 Fed. Supp. 978. See *Commissioner* v. *Oregon Mutual Life Insurance Co.*, 112 Fed. (2d) 468; affd., *Helvering* v. *Oregon Mutual Life Insurance Co., supra; Commissioner* v. *Monarch Life Insurance Co.*, 114 Fed. (2d) 314; *Continental Assurance Co.* v. *United States* (Ct. Cls.), 8 Fed. Supp. 474; *Old Line Insurance Co.*, 13 B. T. A. 758; Paul and Mertens, sec. 36:13.

The reserves of petitioner in 1938 were actuarially computed upon the basis of a standard table of mortality. However, we do not think this change in method of computation converts it into a life insurance company within the meaning of section 201 (a), *supra*.

As stated above, the reserves contemplated by section 201 (a) are the same as under section 203 (a) (2). In the latter section they are referred to as "reserve funds required by law." This means the law of a state in which the insurance company operates. See *Standard Industrial Life Insurance Co., supra*, and art. 203 (a) (2)–1, Regulations 94 and 101.

The only requirement of the state law of Florida under which petitioner operates is a minimum one that the reserves shall not be less than 3 percent of the gross premiums. The reserves set up by petitioner in excess of this amount were therefore voluntary on its part and not required by law. A basic reason for the classification of the company as a life insurance company is therefore absent, since that excess could be withdrawn from the reserve and used for any other desired corporate purpose without violation of the state law. The statute of a state must be more specific in its requirements to satisfy the Federal revenue acts in this respect. Cf. *Mothe Burial Benefit Insurance Co.* v. *Fontenot, supra,* and *National Fidelity Life Insurance Co.* v. *United States,* 4 Fed. Supp. 421. See also *Commissioner* v. *Pan-American Life Insurance Co.,* 111 Fed. (2d) 366; *Commissioner* v. *Monarch Life Insurance Co., supra.*

Respondent is affirmed on this issue.

The petitioner relies upon *Lamana-Panno-Fallo Industrial Insurance Co.* v. *Commissioner,* 127 Fed. (2d) 56. This case reversed a memorandum decision of the Board which followed *Standard Industrial Life Insurance Co., supra.* In the *Lamana* case, the state statute required the reserves to be actuarially computed upon the basis of mortality tables. A state official there permitted the insurance company to compute its reserves at a percentage of but less than the full amount thus computed. The court said the Federal revenue acts had to do with the character and not the sufficiency of the "reserve" and held that the "reserve" in the *Lamana* case fulfilled that requirement. But that holding is not contrary to our conclusion here, because the reserves here, except for 1938, were not actuarially computed upon the basis of mortality tables.

We hold that petitioner, during none of the taxable years, was a "life insurance company" within section 201 (a) of the controlling Federal revenue acts. That conclusion renders the second issue moot.

The third issue is that if petitioner is held to be an insurance company other than life or mutual and therefore taxable under section 204, should it not be taxed on the basis of premiums "earned" instead of premiums received, under section 204 (b) (5) ?[3] Thus it argues that neither the advance premiums nor the additions to the reserves in those years to meet future risks are "earned" premiums and should, accord-

---

[3] SEC. 204. INSURANCE COMPANIES OTHER THAN LIFE OR MUTUAL.

\* \* \* \* \* \* \*

(b) DEFINITION OF INCOME, ETC.—In the case of an insurance company subject to the tax imposed by this section—

\* \* \* \* \* \* \*

(5) PREMIUMS EARNED.—"Premiums earned on insurance contracts during the taxable year" means an amount computed as follows:

From the amount of gross premiums written on insurance contracts during the taxable year, deduct return premiums and premiums paid for reinsurance. To the result so obtained add unearned premiums on outstanding business at the end of the preceding taxable year and deduct unearned premiums on outstanding business at the end of the taxable year.

ingly, be deducted as "unearned" premiums in computing "earned" premiums for those respective years.

Respondent concedes the correctness of petitioner's proposed adjustments. in computing premiums earned, except for the increase of reserves for the year 1938 above the 3 percent of premiums which measured its reserve in prior years. The reserve for that year was based actuarially upon standard mortality tables. Respondent contends only that the proper reserve for that year is limited to 3 percent of gross premiums received in that year, on the ground that this was the amount of the reserve required by the Florida statute. The petitioner argues that the provisions of the state law are immaterial. Its contention is that the deductibility of the contested item under section 204 (b) (5), *supra*, depends upon whether, in fact, it was an unearned premium and that this item was such. See *Massachusetts Protective Association* v. *United States*, 114 Fed. (2d) 304; *Travelers Equitable Insurance Co.*, 22 B. T. A. 784.

The reserve set up in 1938 was the amount which the petitioner would have set up in the aggregate if it had been computing its reserves regularly on an actuarial basis. Therefore, it represents, in a large measure, additions to the reserve which should have been made in prior years on that basis. In the computation of earned premiums, the statute specifically requires that unearned premiums at the end of the preceding year be added to net premiums for the taxable year. Sec. 204 (b) (5), *supra*. Unearned premiums at the end of the taxable year are then to be deducted. The reserve set up during the taxable year here may properly be considered unearned premiums. But the amount of unearned premiums at the end of the preceding year is not disclosed. Certainly it was greater than the amount actually set aside in that year. Petitioner must therefore fail on this issue for lack of proof.

*Decision will be entered under Rule 50.*